UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>)<br>)<br>)<br>V.            )<br>)<br>)<br>LEE HENRY,                  )<br>)<br>   Defendant             ) | Criminal Nos.:05-30010-MAP<br>              05-30011-MAP |

**MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE**

**FACTS**

On or about October 23, 2003, a warrant for the defendant's arrest was issued by the United States District Court for the District of Massachusetts in docket number 03-30043-MAP. The warrant information was entered into the NCIC database at approximately 6:56 a.m. on October 25, 2003. On or about October 28, 2003, Springfield Police Officers were instructed to be on the lookout for the defendant per information received by the Springfield Police Detective Bureau. At that time, FBI Special Agent, Robert Lewis, was assigned as a liaison officer to the Western Massachusetts Gang Task Force. The task force included members of the Springfield Police Detective Bureau.

On or about October 29, 2003 the defendant appeared in the United States District Court in Springfield, Massachusetts in order to surrender himself on said warrant. The defendant was released by the Court on October 30, 2003 in the afternoon.

On November 1, 2003 at approximately 5:25 p.m., the defendant was arrested by Springfield Police Officers outside of 80 Catharine Street, Springfield, Massachusetts. The arrest was based upon a "Be on the lookout" for the defendant which was transmitted to the arresting officers by the Springfield Police Detective Bureau on October 28, 2003 and upon information contained in the NCIC database which continued to show an existing warrant for the defendant's arrest from the United States District Court for the District of Massachusetts. Subsequent to his arrest, Springfield Police Officers searched the defendant's person. The Government alleges that, as a result of the search, the police officers seized a packet of small wax paper envelopes containing a whitish powder that is believed to be heroin. In addition, Springfield Police Officers searched the 1997 Ford Expedition that the defendant was driving at the time of his arrest. The Government alleges that, as a result of the search of the motor vehicle, ten additional bags of heroin were seized.

The NCIC database was updated on November 3, 2003 to remove the warrant for the defendant's arrest regarding the Federal Court case.

**ARGUMENT**

The defendant contends that the evidence seized by Springfield Police Officers from his person and his motor vehicle must be suppressed. The seizure of such evidence was a violation of the defendant's rights under the Fourth Amendment to the United States Constitution as the police officers acted in reliance on a police record indicating the existence of an outstanding arrest warrant which was determined to be erroneous. Other than the erroneous warrant information, there were no other factors observed by the police officers which gave them probable cause or reasonable suspicion to stop the defendant's motor vehicle.

The Fourth Amendment states that "the right of the people to be secure in their persons, houses, papers and effects, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched , and the persons or things to be seized."

The defendant anticipates that the Government will argue that, although there might have been a violation of his Fourth Amendment rights, the exclusionary rule should

not apply to bar the admission of the evidence due to the police officers' good faith reliance on the accuracy contained in the information received regarding the warrant.

The issue of whether the exclusionary rule should be applied has been regarded as a separate inquiry from the question of whether a party's Fourth Amendment rights were violated. Illinois v. Gates, 462 U.S. 213, 223, 103 S.Ct. 2317, 2324, 76 L.Ed.2d 527 (1983). The exclusionary rule is a judicially created remedy which protects against future Fourth Amendment violations through the rule's deterrent effect. United States v. Leon, 468 U.S. 897, 906, 104 S.Ct. 3405, 3411-3412, 82 L.Ed.2d 677 (1984). The rule's application has been restricted to those instances where its remedial objectives are thought to best served. Leon, supra 468 U.S. at 908, 104 S.Ct. at 3412-3413. The Supreme Court has stated that where "the exclusionary rule does not result in appreciable deterrence, then, clearly, its use is unwarranted." United States v. Janis, 428 U.S. 433, 454, 96 S.Ct. 3021, 3032, 49 L.Ed.2d 1046 (1976).

In Arizona v. Evans, 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995), the defendant was arrested by Phoenix, Arizona police officers during a traffic stop when a patrol car's computer indicated that there was an outstanding warrant for his arrest. A search of the defendant's car revealed a bag of marijuana and he was charged with

possession of that substance. The defendant moved to suppress the marijuana, arguing that the warrant had been quashed before his arrest. The erroneous warrant information remained in the computer system as a result of an error by court employees not directly associated with the arresting officers or their police department.

In reversing an order of the Arizona Supreme Court which suppressed the marijuana, the United States Supreme Court noted that the exclusionary rule was historically designed as a means of deterring police misconduct, not mistakes by court employees. Arizona v. Evans, supra at 14, 115 S.Ct. at 1193. The Court further held that there was no basis for believing that application of the exclusionary rule would have a significant effect on court employees responsible for informing the police that a warrant has been quashed. Since court employees are not adjuncts to the law enforcement team, they have no stake in the outcome of a particular prosecution. . Arizona v. Evans, supra at 15, 115 S.Ct. at 1193.

Thus, the clear import of the Evans decision is that the good-faith exception to the exclusionary rule is applicable to errors committed by court personnel. Although the Court did not address specifically the issue of whether the good-faith exception applies when police personnel are involved in faulty record-keeping, it was noted by one of

the Justices that "Certainly the reliability of recordkeeping systems deserves no less scrutiny than that of informants." Arizona v. Evans, supra 514 U.S. at 17, 115 S. Ct. 1185 (O'Connor, J., concurring).

Although the Government may argue that this Court should not look beyond the good faith of the arresting officers, it should be noted that the Supreme Court has held that if the exclusion of evidence obtained pursuant to a subsequently invalidated warrant is to have any deterrent effect, therefore, it must alter the behavior of the individual law enforcement officer or the policies of their departments. Hoay v. State, 71 S.W. 3d 573, 577 (Ark. 2002) quoting United States v. Leon, 468 U.S. at 918, 104 S.Ct. 3405.

The present case in unlike that of Arizona v. Evans in that court employees were not responsible for the erroneous warrant information remaining on the system. In this case, it was the responsibility of FBI Agent Lewis to input the correct information into the system. It was not the responsibility of a court employee of the United States District Court as the NCIC is conducted under the auspices of the FBI. United States v. Mackey, 387 F. Supp. 1121, 1123 (1975). Therefore, under the holding in Arizona v. Evans, the exclusionary rule should apply and the narcotics seized should be suppressed as law enforcement was responsible for

not maintaining accurate records. The Government may argue that since it was not the Springfield Police Department that was responsible for updating these records, the exclusionary rule should not apply as the officers effecting the arrest were not from the law enforcement agency responsible for updating the records. However, it must be noted that FBI Agent Lewis was the liaison for the FBI on the Western Massachusetts Gang Task Force that is made up of local law enforcement such as officers from the Springfield Police Department Detective Bureau. A police officer has knowledge, or may be properly charged with knowledge of an unconstitutional search under the collective knowledge rule. Generally, the rule benefits law enforcement by providing that when making an arrest, an officer may rely upon information supplied by his fellow officers. On the other hand, if the information fails to support a legal arrest, evidence seized as a result of the arrest cannot be insulated from challenge on the grounds that the investigating officer relied on information furnished by fellow officers. Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971). The good-faith reliance of the arresting officers, in acting upon information provided to him through police channels, cannot overcome the intrusion made upon the defendant's Fourth Amendment rights. People v. Joseph, 128

Ill. App.3d. 668, 83 Ill.Dec. 883, 470 N.E.2d 1303, 1306 (1984)

In State v. White, 660 So.2d 684 (Fla. 1995), the defendant was driving a car that was stopped by a local deputy sheriff for a traffic violation. When the deputy sheriff ran the defendant's information, the computer showed an outstanding civil contempt arrest warrant. The defendant was arrested and contraband was seized as a result of the search incident to the arrest. Subsequently, it was discovered that the warrant had been served upon the defendant four days prior to the defendant's arrest. In affirming the order of suppression of the contraband, the Florida Supreme Court stated:

> Turning to the instant case, we find that the error under review boils down to one unmistakable fact--failure of the police to maintain up-to-date and accurate computer records resulted in an illegal arrest and search. This type of police negligence fits squarely within the class of governmental action that the exclusionary rule was designed to deter, i.e. police negligence or misconduct that is likely to be thwarted if the evidence seized is suppressed. Suppression of evidence seized pursuant to police computer error will encourage law enforcement agencies to diligently maintain accurate and current computer records.

660 So.2d at 666. The White Court also cited dicta set forth in the Arizona Supreme Court's opinion in the Evans case:

> It is repugnant to the principles of a free society that a person should ever be taken into police custody because of a computer error precipitated by government carelessness. As automation increasingly invades modern life, the

>     potential for Orwellian mischief grows. Under such
>     circumstances, the exclusionary rule is a "cost"
>     we cannot afford to be without.

Id., at 667-668.

The Government may argue that the four day delay in updating the warrant information was sufficiently short so that reliance by the police officers may be considered reasonable and in good faith. Commonwealth v. Riley, 284 Pa. Super. 280, 425 A.2d 813, 816 (1981)(delay of four days), Childress v. United States, 381 A.2d 614 (D.C. App. 1977)(delay of four days). However, there are a number of cases from various jurisdictions where delays of similar and even shorter lengths were considered to be unreasonable. Ott v. State, 325 Md. 206, 600 A.2d 111 (Md. Ct. App. 1992)(seven days, two of which fell on a weekend); Commonwealth v. Hecox, 35 Mass. App. Ct. 277, 619 N.E. 2d 339 (1993)(four days); People v. Lent, 92 A.D. 813, 460 N.Y.S. 2d 369 (N.Y. 1983)(eight hours); People v. McElhaney, 146 Misc.2d at 749-750, 552 N.Y.S.2d 825 (two days).

In Riley, the court noted that the computer was that of the NCIC and not of the Philadelphia Police Department. As this case presents a similar situation, the Government may argue that the arresting officers should not be chargeable with knowledge of the warrant information regarding Mr. Henry. However, it is apparent that Springfield Police Officers were given information regarding the issuance of

the warrant on October 28, 2003 and that the source of that information was FBI agent Lewis. As agent Lewis was acting as a liaison with the Hampden County Narcotics Task Force whose members included Springfield Police Officers, then the arresting officers should be chargeable with the information that the warrant on Mr. Henry had already been quashed at the time his vehicle was stopped. Ott v. State, supra 600 A.2d. at 118. As stated by the Maryland Court of Appeals, "the conclusion reached by *Childress* presents an anomalous situation that, for some period of time, a police department's failure to maintain accurate records, without explanation, may lawfully place citizens at risk." Id. 35 Mass. App. Ct. at 284, 619 N.E. 2d. at 343.

## CONCLUSION

The defendant was arrested solely on the basis of erroneous warrant information from the NCIC. There were no other factors cited by the arresting police officers that would have given them probable cause to make an arrest. The warrant had been quashed four days earlier but that information was not entered into the NCIC database until two days after the defendant's arrest. The defendant's Fourth Amendment rights were violated. It was law enforcement's duty to maintain accurate records on the defendant's warrant status. The FBI agent responsible for updating the information to the NCIC was a liaison officer to the Western

Massachusetts Gang Task Force and had contact with members of the Springfield Police Department's Detective Bureau which was another source of information for the arresting officers regarding the defendant's warrant status. Therefore, the arresting officers should be charged with the knowledge of the warrant status. As a result, the good-faith exception to the exclusionary rule should not apply in this case and the narcotics seized by the Springfield Police from the defendant's person and vehicle should be suppressed.

                                    THE DEFENDANT

                                    by _____
                                    William J. O'Neil
                                    7 Stockbridge Street
                                    Springfield, MA 01103
                                    (413)733-6821