UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CR. NO. 05-30010-MAP |
| ) | |
| vs. ) | |
| ) | |
| LEE HENRY, ) | |
| ) | |
| Defendant ) | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

The United States of America, by and through its undersigned attorneys, hereby files this Response to Defendant's Motion to Suppress Evidence. The government moves that the motion be denied and relies on the following in support thereof.

I.  Facts

Lee Henry is currently charged in two pending indictments. One indictment charges distribution and possession with intent to distribute heroin (Cr. No. 05-30010-MAP) and the other charges contempt of court for violation of release conditions (Cr. No. 05-30011). The instant Motion to Suppress and this response are relevant only to Cr. No. 05-30010-MAP. In a previous indictment (Cr. No. 03-30043-MAP) returned on October 23, 2003, Henry was charged with one count of distribution of heroin and three counts of distribution of crack cocaine. An arrest warrant was issued that day. Members of the FBI Gang Task Force (GTF), which includes members of the Springfield Police Department (SPD),

1

began looking for Henry on Friday, October 24, 2003. When they could not locate Henry that day, FBI Special Agent (SA) Rob Lewis submitted paperwork to enter the federal arrest warrant in the National Crime Information Center (NCIC) system.

On Monday, October 27, 2003, Attorney Linda Thompson called the United States Attorney's Office in Springfield and said she was going to surrender Henry at the Springfield federal courthouse. She did not surrender Henry that day, and as a result, GTF efforts to locate Henry continued. On October 28, 2003, members of the SPD detective bureau were informed of the outstanding federal warrant. On October 29, 2003, Attorney Thompson surrendered Henry at the federal courthouse, and an initial appearance was held that afternoon. On October 30, 2003, a detention hearing began at 4:00 pm. Magistrate Neiman ordered the release of Henry on conditions, which included the standard condition that he not violate any state or federal laws. At approximately 6:00 pm on October 30, 2003 Henry was released. On Friday, October 31, 2003, SA Lewis submitted paperwork to remove the federal arrest warrant from the system at approximately 9:23 am.

On November 1, 2003, at 5:10 pm Officer Craig Davis, who had previously arrested Henry and knew his criminal history, saw Henry in a Ford Expedition at Bay and Catherine Streets in Springfield. Officer Davis had been informed of the federal

arrest warrant on October 28, 2003 and radioed the SPD to determine whether the federal arrest warrant was still outstanding. Officer Davis was informed the federal arrest warrant was still active. Officer Davis followed Henry's vehicle, waited for backup, and then effected a motor vehicle stop. Henry was the only occupant of the vehicle and was arrested on the federal warrant. During a search incident to arrest, 40 bags of heroin were removed from Henry's pants pocket. Another 10 bags were found in the console of the vehicle during an inventory search.

SA Lewis was informed that Henry had been arrested over the weekend. At that time, SA Lewis learned that his request to remove the warrant from NCIC had not been completed Friday as he had anticipated. Instead, the warrant was recalled at approximately 10:37 am Monday.

II. Argument

The exclusionary rule should not be applied to the evidence seized from Henry's person and vehicle on November 1, 2003. Suppression of the evidence does not efficaciously serve a deterrent purpose. Although the arrest warrant had already been executed, Officer Davis' actions were objectively reasonable, as he checked on the validity of the warrant before effecting the arrest, and the FBI employees updating the NCIC database acted in

good faith. The inaccurate computer record upon which the arrest was based is not cause for application of the exclusionary rule.

Use of the exclusionary rule exacts a high cost on society. See, e.g., United States v. Leon, 468 U.S. 897, 907 (1984); Rakas v. Illinois, 439 U.S. 128, 137 (1978). "Relevant and reliable evidence is kept from the trier of fact and the search for truth at trial is deflected." Rakas, 439 U.S. at 137. Therefore, use of the exclusionary rule has been "restricted to those instances where its remedial objectives are thought most efficaciously served." Arizona v. Evans, 514 U.S. 1, 10 (1995)(citations omitted). This rule can be so restricted because the Fourth Amendment does not contain a provision that expressly excludes evidence gathered in violation of its commands. Leon, 468 U.S. at 906. Rather, the exclusionary rule "is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect." United States v. Calandra, 414 U.S. 338, 348 (1974).

Whether to apply the exclusionary rule in a case is an analysis distinct from the question of whether Fourth Amendment rights have been violated. Leon, 468 U.S. at 906. There are many additional considerations in a decision regarding the exclusionary rule. Applying the exclusionary rule indiscriminately may "generat[e] disrespect for the law and administration of justice." Stone v. Powell, 428 U.S. 465, 491

4

(1976). "The disparity in particular cases between the error committed by the police officer and the windfall afforded a guilty defendant by application of the rule is contrary to the idea of proportionality that is essential to the concept of justice." Id. at 490-91. Furthermore, the rule does not serve its deterrent purpose if it is used when an officer has the reasonable belief that he is acting within the confines of the Fourth Amendment. See Illinois v. Gates, 462 U.S. 213, 260 (1983).

In Leon, the Court applied the principles of the exclusionary rule and held that when an officer was acting in objectively reasonable reliance - in good faith - on a subsequently invalidated search warrant, the substantial costs of exclusion could not be justified. Leon, 468 U.S. at 905, 922. The Court noted that suppression would still be an appropriate remedy if the magistrate or judge was mislead by information in an affidavit the affiant knew or should have known was false, the issuing magistrate or judge wholly abandoned his judicial role, an officer relied on an affidavit clearly lacking probable cause, or the warrant was so facially deficient that the officer couldn't reasonably believe it to be valid. See id. at 923.

The good faith exception to the exclusionary rule was expanded in Evans, where the Supreme Court sought to determine "whether the exclusionary rule requires suppression of evidence

5

seized incident to an arrest resulting from an inaccurate computer record, regardless of whether police personnel or court personnel were responsible for the record's continued presence in the police computer." Evans, 514 U.S. at 6. The Court found the exclusionary rule to be inapplicable to the seizure of drugs from the defendant and his vehicle where police relied upon a computer check which stated that an arrest warrant was valid but actually had been quashed 17 days prior to the defendant's arrest. Id. at 6, 14-15.

Henry's arrest was under similar circumstances; even though there was good faith in seeking to remove the warrant from NCIC, the inaccurate computer record remained. SA Lewis submitted the paperwork to remove the arrest warrant from the system within fifteen hours of the defendant being released by the magistrate in the evening of October 30, 2003. The NCIC check was run on November 1, 2003 only forty-eight hours after Henry's release. Furthermore, Officer Davis was acting in good faith, and none of the types of "bad faith" situations delineated in Leon that would warrant suppression are present in the instant case. See Leon, 468 U.S. at 923. Officer Davis had been told several days prior to the arrest about the warrant, and upon seeing Henry, he confirmed its existence by requesting a NCIC check. Officer Davis had no knowledge that the defendant had been arrested three days earlier and would have been derelict in his duty had he not

arrested Henry when he saw him and confirmed the existence of the warrant.

While it was an error of the FBI in updating the warrant information and not an error by court personnel as in Evans, suppression is still not justified. The Evans Court declined to address the specific question of whether the evidence should have been suppressed if police personnel were responsible for the error. Evans, 514 U.S. at 16 n.5. However, the Court did not find it significant that it was the error of a court clerk rather than the mistake of a police officer. Berg v. County of Allegheny, 219 F.3d 261, 271 (3d Cir. 2000) (citing Evans, 514 U.S. at 13-15).

Indeed, Circuit Courts have held that the good faith exception applies when there is police error but an officer has a good faith and objectively reasonable belief in the legality of his actions. See United States v. De Leon-Reyna, 930 F.2d 396, 400-01 (5th Cir. 1991) (officer did not follow protocol in radioing in vehicle plate and therefore received incorrect information in his license check); United States v. Towne, 870 F.2d 880, 885 (2d Cir. 1989) (state authorities refused to withdraw a warrant despite its promise to drop all charges as part of an agreement with the defendant and another state). Furthermore, in Towne, the Court noted that it was objectively reasonable for the officer to rely on the warrant in making the

7

arrest and therefore, "[a]pplying the exclusionary rule in this case would not further the purpose of the rule, which is to deter police misconduct." Towne, 870 F.2d at 885.

Officer Davis was also reasonable in relying on the warrant when he arrested Henry. He confirmed the existence of the warrant and had no reason to believe that Henry had been previously arrested. The defense, however, argues that Officer Davis should be charged with the collective knowledge of all law enforcement divisions who have any officers on the GTF. While it may sometimes be appropriate to look at the collective knowledge of officers even absent direct communication, the type of communication that the court has been willing to aggregate is not present here. See, e.g., United States v. Santa, 180 F.3d 20, 28 (2d Cir. 1999) (stating that the knowledge of a clerk or desk officer should not ipso facto be imputed to the arresting officer); United States v. Shareef, 100 F.3d 1491, 1504 (10th Cir. 1996) (stating that since the district court found that knowledge had not been shared, collective knowledge could not apply even though the officers were working with each other at the scene). See also United States v. Valez, 796 F.2d 24, 28 (2d Cir. 1986) (stating that the rule of collective knowledge does not apply to mistaken arrest even though facts known to some members of the police force could exonerate the arrestee).

8

The defense cites <u>Whiteley v. Warden, Wyo. State Penitentiary</u>, 401 U.S. 560 (1971), to support the proposition that Officer Davis should be charged with the collective knowledge of all investigatory agencies of the GTF. However, <u>Whiteley</u> is distinguishable from the instant case. <u>Whiteley</u> refers to the imputation of knowledge from one officer to another when the officers are working on the same case. <u>Santa</u>, 180 F.3d at 28. It does not stand for the "broader proposition that all information received by a police department...must be imputed to every officer in the department." <u>Id.</u> The defense wishes to go beyond the broader interpretation of <u>Whiteley</u> rejected by the courts to hold that all information received by one department must be imputed to every officer in every department associated with that department through organizations such as the GTF. Furthermore, since subsequent case law has rejected <u>Whiteley's</u> reflexive application of the exclusionary rule, its "precedential value regarding application of the exclusionary rule is dubious." <u>Evans</u>, 514 U.S. at 13.

In addition to Officer Davis' good faith action in executing the arrest, those FBI employees responsible for updating the warrant information in NCIC evidenced good faith in their actions. Early in the morning following Henry's release, SA Lewis faxed the request to remove the warrant from NCIC with a good faith belief that his actions would promptly remove the

9

warrant from NCIC. Less than thirty-six hours later, Officer Davis saw Henry, checked on the status of the warrant and effected the arrest. At the time of his arrest on Saturday, approximately forty-eight hours had elapsed since Henry was released. When twice that amount of time had elapsed between the NCIC check and the satisfaction of an outstanding arrest warrant, the Superior Court of Pennsylvania stated that "police misconduct cannot be inferred." Commonwealth v. Riley, 425 A.2d 813, 816 (Pa. Super. Ct. 1981).

The two day period between release and the actual check is the relevant time period in determining the reasonableness of the delay. While "[t]he authorities are not in accord as to what kind of delays will support the conclusion that the government is at fault," Commonwealth v. Hecox, 619 N.E.2d 339, 343 (Mass. App. Ct. 1993), some of the authorities the defendant cites in support of the contention that the delay was unreasonable were longer than the two days between the satisfaction of Henry's warrant and the NCIC check in the instant case. Ott v. State, 600 A.2d 111 (Md. Ct. App. 1992) (one week delay); Hecox, 619 N.E.2d at 343 (five day delay). Furthermore, the instant case is easily distinguishable, based on police conduct, from the remaining cases that the defendant cited to show unreasonableness where the time period was equal to the time period in the instant case, People v McElhaney, 552 N.Y.S.2d 825, 827 (N.Y. 1990) ("The

10

police cannot be permitted to consciously disregard a situation"), or less than that time period, People v Lent, 92 A.D.2d 941, 941 (N.Y. App. Div. 1983) (the officer relied solely on a day old teletype).

The time that had elapsed since Henry's release does not suggest unreasonableness on the part of the police. A four day delay, double the delay in the instant case, has been found reasonable. See, e.g., Riley, 425 A.2d at 816; Childress v. United States, 381 A.2d 614, 616 (D.C. 1977). Indeed, the Court specifically acknowledged that "[a]dministrative delays attendant to the operation of any metropolitan area police department" can result in a delay in removing a warrant. Childress, 381 A.2d at 617. The type of clerical error in the instant case was also the result of administrative delays, reasonable under the circumstances.

Furthermore, the good faith of all of the law enforcement personnel involved should be dispositive. The Second Circuit upheld an arrest based on a two year old warrant and stated "the only issue in this case is whether [the arresting officer] had probable cause to believe that the defendant was wanted on outstanding criminal charges." Towne, 870 F.2d at 885. See also Evans, 514 U.S at 6, 14-15 (refusing to apply the exclusionary rule because a good faith mistake resulted in a warrant remaining in the system for 17 days). The federal cases support a good

faith analysis of the situation. Indeed, the Supreme Court has stated:

> If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed <u>only</u> if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.

<u>Leon</u>, 468 U.S. at 919 (<u>citing</u> <u>United States v. Peltier</u>, 422 U.S. 531, 542 (1975))(emphasis added). Officer Davis had no knowledge of the previous arrest and cannot properly be charged with such knowledge. The objectively reasonable actions of both Officer Davis of the SPD and also the FBI employees acting to remove the warrant demonstrate only good faith on the part of law enforcement. The great social cost of applying the exclusionary rule is not justified in this case, particularly as doing so would provide no deterrent benefit since all law enforcement personnel were acting in good faith.

III. Conclusion

For the above stated reasons, the Court should deny the

defendant's motion to suppress.

                                              Respectfully submitted,

                                              MICHAEL J. SULLIVAN
                                              United States Attorney

                                              TODD E. NEWHOUSE
                                              Assistant United States Attorney

## CERTIFICATE OF SERVICE

Hampden, ss.                                    Springfield, Massachusetts
                                                        August 11, 2005

    I, Todd E. Newhouse, Assistant U.S. Attorney, do hereby certify that I have served a copy of the foregoing, via mail to all counsel of record.

                                              TODD E. NEWHOUSE
                                              Assistant U.S. Attorney