UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
                         )
                         )        CASE NOS.: 05-30010
V.                       )                   05-30011
                         )
LEE HENRY,               )
                         )
        Defendant        )



DEFENDANT'S SENTENCING MEMORANDUM

### I.    OPENING COMMENTS

It is the duty of all defense attorneys in preparing for sentencing to not only provide assistance to the United States Probation Office during Presentence Investigation, but also to present a personal perspective on the defendant for the purpose of mitigating a sentence. The sentencing responsibilities of defense attorneys include the use of outside resources and experts in investigating factual information concerning the background of the defendant and providing dispositional alternatives. These duties are in addition to the lawyer's traditional role as advocate and are indeed an extension of that role.

The contents of this report are not meant to duplicate the government's presentence investigation, but are meant to supplement it in a manner that will be consistent with the court's needs in obtaining a complete perspective on the defendant prior to imposing a sentence, pursuant to Rule 32 of the Federal Rules of Criminal Procedure and 18 U.S.C. 3661.

The Probation Office has no legal duty to advise the court of any pertinent case law that may be supportive of mitigation that the court may wish to entertain in making a balanced sentencing decision. A review of case law is necessary, in conjunction with a defendant's criminal and personal history, in order to determine if the court will consider exercising similar or different creative mitigation considerations expressed throughout the Federal Court System. This report is necessary to fill this gap in the sentencing process. The Government PSI suggests that there are no reasons for which a downward departure (mitigated sentence) would be recommended. Counsel respectfully objects to this conclusion and sets forth in this memorandum valid and applicable reasons why mitigation is authorized and supportable.

## II.   INDIVIDUALIZATION OF A SENTENCE

Relying on the decision in **Blakely v. Washington**, U.S._____, 124 S.Ct. 2531 (2004), the Court concluded (5-4) that "the Sixth Amendment as construed in **Blakely** does apply to the Sentencing Guidelines." The reason for the constitutional infirmity was the mandatory nature of the guidelines coupled with reliance upon judicial, rather that jury, fact finding. The Court's remedy, however, was not to invalidate the guidelines in toto, but rather was to render them advisory - that is, to make them true guidelines. The Court rendered them advisory by invalidating two statutory provisions enacted by the Sentencing Reform Act of 1984. First, the Court invalidated 18 U.S.C. section 3553(b), which requires the sentencing court to impose a sentence called for by the guidelines unless there is a ground for departing. The Court also invalidated 18 U.S.C. section 3742(e), which sets forth the circumstances in which a court of appeals can overturn a sentence. The Court, however, retained appellate review of sentences by reading into the remainder of section 3742 an implied standard review, namely, a review for unreasonableness. In crafting this remedy, the majority expressly rejected suggestions that the remedy be (1) an invalidation of the guidelines only in cases in which judicial fact finding of factors is necessary to apply the guidelines and (2) a requirement that a jury determine all factors necessary to apply the guidelines.

The individualization of a sentence is deeply entrenched in our criminal justice system, and has not been eroded by the nature of the sentencing reform guidelines and their constitutional standing. In **Williams v. New York**, 337 U.S.C. 241, 247 (1949) the court stated, "Punishment should fit the offender and not merely the crime." The belief does not prevail, despite the guidelines, that every offense in a like legal category calls for identical punishment without regard to the past life and habits of a particular defendant. Furthermore, in **U.S. v. Lopez-Gonzales**, 688 F.2d 1275 (9th Cir. 1982), the court reinforced the importance of considering all mitigating and aggravating circumstances involved in a case so that he punishment imposed should fit the offender and not merely the crime. Even under the new sentencing reform guidelines departures from the guidelines have been evidenced showing that various courts have exercised discretion in individualizing and mitigating sentences.

## III.   DEFENDANT'S PLEA AGREEMENT

The defendant has agreed to plead guilty to indictment 05-30010 for violating Title 21, U.S.C., section 841(a)(1)

Distribution and Possession with Intent to Distribute Heroin. The defendant has also agreed to plead guilty to indictment 05-30011 for violating Title 18, U.S.C., section 401 charging him with contempt of court.  There is no plea agreement between the defendant and the government.

### IV.  GUIDELINE ASSESSMENT

Pursuant to the Probation Office's presentence investigation, the defendant's base offense level is reflected by the quantity of heroin alleged to be part of the real and charged offense behavior of the defendant.  In this case, the defendant is responsible for 1.99 grams of heroin.  Turning to the chapter on drug offenses, U.S.S.G., section 2D1.1 of the Sentencing Guidelines, the base offense level for less than five grams of heroin is a level 12.

### V.  SENTENCE ENHANCEMENTS

The government has alleged that the defendant committed the drug offense while on bail in Docket No.: 03-30043-MAP. According to U.S.S.G., section 3D1.2(c), when one of the counts of conviction embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts, those counts shall be grouped together in a single count.  In the instant matter. Thus the conduct which resulted in the charge of contempt of court is addressed in an enhancement being applied to the calculation under U.S.S.G., section 2J1.7, Commission of Offense While on Release.

According to Title 18, U.S.C., section 3147 and U.S.S.G., section 2J1.7, if the defendant commits another offense while on bail, a 3 level enhancement is applied as a specific offense characteristic to the guideline calculation for the offense while committed while on bail.  In this case, a 3 level increase is applied.

### VI.  ACCEPTANCE OF RESPONSIBILITY

The defendant has accepted responsibility for his actions. Pursuant to U.S.S.G., section 3E1.1(a) a 2 level reduction has been applied which is reflected in the Presentence Report.

### VII.  CHAPTER FOUR ENHANCEMENTS

In the Presentence Report, the Probation Office indicates that the career offender provisions and accompanying sentence enhancements are applicable to the defendant in this case.

The guidelines, at U.S.S.G., section 4B1.1 provide that a defendant will be considered a career offender if he or she meets three conditions: 1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; 2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and 3) the defendant has at least two prior felony convictions of either a crime of violence, or an applicable controlled substance.

The defendant objects to the sentencing enhancement provisions in Title 21 U.S.C., section 851(a)(1), U.S.S.G., section 4B1.1, Title 18 U.S.C., section 3147, and U.S.S.G., section 2J1.7 and applied to him in this case.

With respect to Title 21 U.S.C., section 851(a)(1) the Government is attempting to use the two convictions from Hartford Superior Court to increase the punishment imposed by this Court upon Mr. Henry's conviction for the drug offense alleged in Count One of the Indictment in 05-30010. In fact, according to the Presentence Report, use of those two convictions will take Mr. Henry from a total offense level of 13 to that of 31 under the theory of him being a career offender.

With respect to Title 18 U.S.C., section 3147, the Government is attempting to use the fact that the defendant committed the instant offense while on bail to enhance his sentence upon conviction. In Mr. Henry's case, this would call for a 3 level enhancement to be applied as a Specific Offense Characteristic to the guideline calculation for the charge in Docket No.: 05-30010.

The indictments against the defendant do not specify that the defendant was convicted of previous felony drug convictions or that he committed the instant offense while on release of another federal offense. The defendant pled guilty to the offenses contained in both indictments and no more. The defendant contends that application of these provisions violates his rights pursuant to the Sixth Amendment to the United States Constitution because the sentence enhancing facts are not charged in the indictment that charges the substantive offense and the defendant is deprived of his right to have those facts presented to a grand jury and to have them proved to a jury beyond a reasonable doubt. **Apprendi v. New Jersey**, 530 U.S. 466, 490, 120 S. Ct. 2348, (2000); **Blakely v. Washington**, 542 U.S. ____, 124 S. Ct. 2531 (2004); **United States v. Booker**, 2005 WL 50108 at *5 (January 12, 2005).

In it's Information filed on March 10, 2005, the Government indicates its intent to rely upon previous felony drug

convictions of the defendant to increase his punishment for the
drug offense alleged in Count One of the Indictment in Docket
No.: 05-30010 MAP.  Specifically, the Government is relying on 1)
a felony conviction for Sale of a Controlled Substance, Docket
No.: 98-0523584-S entered in Hartford Superior Court, Hartford,
Connecticut on July 16, 1999; and 2) a felony conviction for Sale
of Illegal Drug in Docket No.: 98-0520203-S in Hartford Superior
Court, Hartford, Connecticut on July 16, 1999.  On January 19,
2006 the Hartford Superior Court amended the sentence in this
case to reflect a conviction for Sale of Controlled Substance
(see docket sheets attached hereto).  Both the Government and the
Probation Office count these two convictions a separate and
distinct offenses in computing Mr. Henry's criminal history score
thus attributing three points for each of these convictions.
Coupled with one point assessed for the conviction in 03-30043
MAP pursuant to U.S.S.G., section 4A1.1(c) and two points for the
instant offense being committed while he was under sentence in
Hartford Superior Court pursuant to U.S.S.G., section 4A1.1(d),
the Probation Office has computed a criminal history point total
of nine.

     The defendant contends that he should receive only three
criminal history points for the offenses from Connecticut.  On
June 8, 1999, the defendant appeared before the Hartford Superior
Court on the two cases referred to above.  It appears from the
transcript of the sentencing hearing that both cases were joined
for trial on that day.  The judge indicated to Mr. Henry that
"(t)oday is the day.  I'll give counsels a few minutes after I
recess to discuss but I've got a jury panel upstairs and its your
turn...(I)f it's not resolved in the next few minutes, we're
going to start picking a jury in this case."

     It appears that both of these cases were consolidated for
trial on June 8, 1999.  The judge accepted pleas from the
defendant on both cases on the same day.  In addition, the judge
imposed a sentence of 5 years to state prison, 18 months to be
served with the balance of the sentence suspended for three years
while the defendant was on probation.  These sentences were
imposed concurrently on the same day, July 16, 1999.

     The defendant contends that the sentences imposed in these
two cases are related cases which should be treated as one
sentence for purposes of U.S.S.G., section 4A1.1(a).  The
Application notes to U.S.S.G., section 4A1.2 indicate that:
"(P)rior sentences are considered related if they resulted from
offenses that (A) occurred on the same occasion, (B) were part of
a single common scheme or plan, or (C) were consolidated for
trial or sentencing.

The defendant does not argue that the first factor applies as the dates of offenses are separated by approximately two months. However, the defendant contends that part (B) would apply as his behavior in these cases would appear to be part of a common plan to distribute narcotics. In the first case, which occurred on April 9, 1998, the defendant was observed making frequent stops in his car and speaking with pedestrians. When arrested by the police, he was found to have a significant amount of marijuana in his possession which was consistent with an intent to distribute. In second offense dated June 22, 1998, the defendant was stopped for a traffic offense and found with a significant amount of marijuana which was consistent with an intent to distribute.

The defendant also contends that section (C) applies as it is clear from the transcript of the plea and sentencing hearing that the cases had been consolidated for trial on June 8, 1999 and then for sentencing on July 16, 1999. U.S.S.G., section 4A1.2, comment. (n.3).

The defendant asserts that the two sentences are related cases and should not be viewed as two separate sentences under the Sentencing Guidelines. These two cases were effectively consolidated for trial and sentencing. Both cases came on for jury trial at the same time before the same judge. There was a single plea agreement that required both cases to be disposed of on **Alford** pleas. There was an agreement that the sentences would be identical and would run concurrent with each other. There is "persuasive indicium of formal consolidation apparent on the face of the record which sufficient to indicate that the offenses have some relationship to one another beyond the sheer fortuity that the sentence was imposed by the same judge at the same time." **United States v. Martine**, 413 F. 3d 139, at 151 (1st Cir. 2005).

Thus, the defendant argues that the total of the criminal history points should be six, thus placing him in a Criminal History Category of III.

Both the Government and the Probation Office allege that the defendant is a career offender pursuant to U.S.S.G., section 4B1.1. Accordingly, both the Government and the Probation Office place the defendant in Criminal History Category VI. The defendant contends, as he did above, that the two Connecticut drug offenses should not be counted separately pursuant to the provisions of U.S.S.G., section 4B1.1. The provisions of U.S.S.G., section 4A1.2 are applicable to the counting of convictions under U.S.S.G., section 4B1.1. U.S.S.G., section 4B1.2, comment. (n.3). Therefore, the defendant contends that he should not be considered as a career offender under the sentencing guidelines.

The government may point to the fact that, while on release from bail, from this Court and while still on probation from Connecticut, he committed the instant offense as reason to sentence the defendant in accordance with the guideline assessment in the Presentence Report or for reason for an upward departure from the sentencing guidelines. Although the following is not meant to excuse his behavior, the defendant has provided a reason as to why he was in possession of narcotics on November 1, 2003.

The defendant indicated that after his release from this Court on October 29, 2003, he still had in his possession a quantity of heroin. Because of his charges in this court, he no longer had any desire to engage in the sale of heroin so he made arrangements with the individual who had originally supplied him with the heroin to return it to that person. That was what the defendant was attempting to do at the time he was arrested by Springfield Police officers on November 1, 2003.

The defendant contends that there are numerous reasons not to employ the strict provisions of the sentencing guidelines in this case.

The Presentence report indicates that he had the benefit of being raised in an intact African American family with supportive parents in a difficult section of Hartford, Connecticut. Although he and his family were provided for, his father and mother both worked and were frequently absent from the home.

Mr. Henry is a high school graduate with some college experience. He served in the United States Navy for over two years before his discharge. Other than those times when he has been in either Federal or State custody, he has been gainfully employed.

The defendant has three minor children from three different mothers. When he was not incarcerated, he was able to pay voluntary support for the children.

The defendant indicates that, at the time of the offense, he was not addicted to cocaine or heroin but that he was using marijuana approximately three to four times a week.

As indicated in both the Presentence Report and the report of Dr. Howard Lester which has been submitted to the Probation Office by Attorney Thompson, an incident, which occurred while Mr. Henry was in the second grade, has had a severe impact upon his life. Mr. Henry describes an incident where he was kidnapped while waiting to a school bus. He was taken to a park in

The government may point to the fact that, while on release from bail, from this Court and while still on probation from Connecticut, he committed the instant offense as reason to sentence the defendant in accordance with the guideline assessment in the Presentence Report or for reason for an upward departure from the sentencing guidelines. Although the following is not meant to excuse his behavior, the defendant has provided a reason as to why he was in possession of narcotics on November 1, 2003.

The defendant indicated that after his release from this Court on October 29, 2003, there was concern from individuals known to him, that since had been arrested and that he had a case pending in the Federal Court, he would enter into some type of cooperation agreement with the Government and that any information that he could provide to the Government might lead to additional arrest of individuals in the Springfield area. Therefore, the defendant participated in behavior that would send a message that he was not cooperating with federal authorities.

The defendant contends that there are numerous reasons not to employ the strict provisions of the sentencing guidelines in this case.

The Presentence report indicates that he had the benefit of being raised in an intact African American family with supportive parents in a difficult section of Hartford, Connecticut. Although he and his family were provided for, his father and mother both worked and were frequently absent from the home.

Mr. Henry is a high school graduate with some college experience. He served in the United States Navy for over two years before his discharge. Other than those times when he has been in either Federal or State custody, he has been gainfully employed.

The defendant has three minor children from three different mothers. When he was not incarcerated, he was able to pay voluntary support for the children.

The defendant indicates that, at the time of the offense, he was not addicted to cocaine or heroin but that he was using marijuana approximately three to four times a week.

As indicated in both the Presentence Report and the report of Dr. Howard Lester which has been submitted to the Probation Office by Attorney Thompson, an incident, which occurred while Mr. Henry was in the second grade, has had a severe impact upon his life. Mr. Henry describes an incident where he was kidnapped while waiting to a school bus. He was taken to a park in

The government may point to the fact that, while on release from bail, from this Court and while still on probation from Connecticut, he committed the instant offense as reason to sentence the defendant in accordance with the guideline assessment in the Presentence Report or for reason for an upward departure from the sentencing guidelines. Although the following is not meant to excuse his behavior, the defendant has provided a reason as to why he was in possession of narcotics on November 1, 2003.

The defendant indicated that after his release from this Court on October 29, 2003, there was concern from individuals known to him, that since had been arrested and that he had a case pending in the Federal Court, he would enter into some type of cooperation agreement with the Government and that any information that he could provide to the Government might lead to additional arrest of individuals in the Springfield area. Therefore, the defendant participated in behavior that would send a message that he was not cooperating with federal authorities.

The defendant contends that there are numerous reasons not to employ the strict provisions of the sentencing guidelines in this case.

The Presentence report indicates that he had the benefit of being raised in an intact African American family with supportive parents in a difficult section of Hartford, Connecticut. Although he and his family were provided for, his father and mother both worked and were frequently absent from the home.

Mr. Henry is a high school graduate with some college experience. He served in the United States Navy for over two years before his discharge. Other than those times when he has been in either Federal or State custody, he has been gainfully employed.

The defendant has three minor children from three different mothers. When he was not incarcerated, he was able to pay voluntary support for the children.

The defendant indicates that, at the time of the offense, he was not addicted to cocaine or heroin but that he was using marijuana approximately three to four times a week.

As indicated in both the Presentence Report and the report of Dr. Howard Lester which has been submitted to the Probation Office by Attorney Thompson, an incident, which occurred while Mr. Henry was in the second grade, has had a severe impact upon his life. Mr. Henry describes an incident where he was kidnapped while waiting to a school bus. He was taken to a park in

Hartford where he was severely beaten and sexually assaulted. The incident was never discussed between Mr. Henry and his family and he has never received counseling regarding the effects of this incident upon him. Mr. Henry did not tell any of his family members that he was assaulted.

A full consultation from Dr. Howard Lester confirms the severe impact the assault had upon Mr. Henry and its effects on his life. Dr. Lester diagnosed Mr. Henry with 1) Post Traumatic Stress Disorder; 2) Mixed Personality Disorder with paranoid and schizoptypal features; and 3) alcohol, cannobis and opioid dependence, all in remission in a controlled environment.

Dr. Lester notes that "At one point, he appeared to be headed for a college education. For a few years after the Job Corps he struggled to maintain stability. But, paranoid, emotionally fragile to the point that his reality testing would breakdown, desperately seeking affirmation and respect, he ultimately followed a self-destructive course. The prestige he associated with being a drug dealer filled the void that a lack of self-esteem had created in himself."

As indicated above and in the Presentence Investigation report as well as in Dr. Lester's report, Mr. Henry should not be viewed as a lost cause who should be imprisoned for a significant portion of his adult life. He does have significant potential to again become a contributing member of society.

Regarding his risk to re-offend, Dr. Lester writes: " Mr. Henry's risk of recidivism should be considered directly proportional to his future treatment success. That is, to the extent that Mr. Henry engages in and benefits from mental health and substance abuse treatment, his risk of recidivism can be significantly lowered." It is clear that any sentence imposed must require Mr. Henry to seek treatment for his serious and ongoing mental health issues or else he is likely to wind up as a participant in the criminal justice system once again.

### IX.    SENTENCING RECOMMENDATION

The defendant respectfully requests a downward departure from Sentencing Guidelines for the reasons state above.

On Docket Number 05-30010, the defendant respectfully requests a sentence of not more than sixteen months and not less than ten months of imprisonment followed by three years of supervised release with conditions that would mandate mental health counseling for the defendant.

Should the Court reject the defendant's argument that the sentence enhancement provided for in Title 18 U.S.C., section 3147 is unconstitutional, then the defendant recommends a sentence of not more than sixteen months and not less than ten months on the drug conviction with a consecutive sentence of not more than eight months and not less than six months on the enhanced portion of the sentence pursuant to Title 18 U.S.C., section 3147. In addition to those sentences, the defendant would recommend six years of supervised release with conditions that would mandate mental health counseling for the defendant.

On that indictment number 05-30011 charging a violation of Title 18 U.S.C., section 401, the defendant recommends a sentence of six to eight months of imprisonment concurrent with the sentence imposed on docket number 05-30010.

LEE HENRY
BY HIS ATTORNEY

Dated: January 24, 2006          William J. O'Neil
                                 7 Stockbridge Street
                                 Springfield, MA 01103
                                 (413) 733-6821
                                 BBO# 548445

CERTIFICATE OF SERVICE

I, William J. O'Neil, Attorney for Lee Henry, do hereby certify that on January 24, 2006, I electronically filed the Defendant's Sentencing Memorandum with the United States District Court for the District of Massachusetts using the CM/ECF System. I served the foregoing document on the following CM/ECF participants:

Todd E. Newhouse
Assistant United States Attorney
1550 Main Street
Springfield, MA 01103


I certify that I have mailed by first class mail, postage prepaid, the documents electronically filed with the Court on the following non CM/ECF participant:

Linda J. Thompson
1331 Main Street
Springfield, MA 01103


Date: January 24, 2006                    _____
                                          William J. O'Neil

# S T A T E   O F   C O N N E C T I C U T

| | |
|---|---|
| STATE OF CONNECTICUT | : CR 98 0520203 S |
| VS. | : SUPERIOR COURT |
| LEE ALLAN HENRY, JR. | : AT HARTFORD |
| | : JUNE 8, 1999 |

BEFORE:

THE HONORABLE BERNADETTE CONWAY, JUDGE

**A P P E A R A N C E S :**

FOR THE STATE:

Thomas O'Brien, Esq.
Assistant State's Attorney

FOR THE DEFENDANT:

James Winslow, Esq.
Assistant Public Defender

**Cynthia Anderson Rocks**
**Court Recording Monitor**



MARTINEZ & O'NEIL    TEL:1-413-746-4069    Jan 25'06  14:53  No004 P.03
Case 3:05-cr-30010-MAP    Document 30-30    Filed 01/24/2006    Page 2 of 16

1

```
 1                    (11:04a.m.)

 2          THE COURT:  All right.  Lee Allan Henry, 16,

 3     17, and 18.

 4          MR. O'BRIEN:  We just began discussions prior

 5     to opening court, Your Honor.

 6          THE COURT:  All right.  Come on up, Mr. Henry.

 7     Henry is your last name, right?

 8          THE DEFENDANT:  Yes.

 9          THE COURT:  Okay.  As I indicated to you, I

10     believe it was yesterday -- wasn't it? --

11          THE DEFENDANT:  Yes.

12          THE COURT:  -- today is the day.  I'll give

13     counsels a few minutes after I recess to discuss,

14     but I've got a jury panel upstairs and it's your

15     turn.  So I'll give your attorney a few more minutes

16     to talk to the state's attorney.  But if it's not

17     resolved in the next few minutes, we're going to

18     start picking a jury in this case.  Do you

19     understand?

20          THE DEFENDANT:  Yes.

21          THE COURT:  We've got the panel upstairs and

22     I'm ready to go.  So I'm not going to give you much

23     more time to make up your mind what you want to do.

24          (The court stood in recess.  11:06a.m.)

25                    (11:44a.m.)

26          MR. O'BRIEN:  Ready for the matters for Lee

27     Allan Henry, Your Honor.
```

MARTINEZ & O'NEIL    TEL:1-413-746-4069    Jan 25'06  14:53 No.004 P.04
Case 3:05-cr-30010-MAP    Document 30-30    Filed 01/24/2006    Page 3 of 16

2

1    MR. WINSLOW: Good after- -- morning, Your

2    Honor. Mr. Henry would request that all prior pleas

3    and elections be withdrawn.

4    THE COURT: So ordered.

5    MR. O'BRIEN: Lee Allan Henry, in docket ending

6    CR 98 520203, you're charged with sale of a

7    controlled substance in violation of 21a-288(b) of

8    the Connecticut General Statutes. How do you plead,

9    guilty or not guilty?

10    THE DEFENDANT: Guilty.

11    MR. O'BRIEN: Lee Allan Henry, in docket ending

12    in CR 98 523584 by way of substitute Information,

13    you're charged with possession of a controlled

14    substance with intent to sell, also in violation of

15    21a-277(b). How do you plead, guilty or not guilty?

16    THE DEFENDANT: Guilty.

17    MR. O'BRIEN: In docket ending -203, the

18    factual basis, April 9, 1998 in front of 10 May

19    Street, officers of the Hartford Police Department,

20    having received reports of narcotics being

21    distributed from that area, went to that location;

22    they took up a surveillance of the area in front of

23    the Pierce Pharmacy which is located on the

24    southwest corner of Ashley and Sigourney Streets,

25    also near 10 May Street.

26    Upon taking that surveillance, they observed

27    what they believed to be hand-to-hand transactions

1   taking place involving an individual identified as
2   the defendant, Lee Henry.  People would approach
3   him, engage in a short conversation, and exchange of
4   items -- and apparently for currency -- would take
5   place by the officer's observations.  Thereafter the
6   officers approached.

7   They had received reports that Mr. Henry was
8   storing the narcotics, the controlled substance, in
9   his vehicle which was parked nearby.  Officers
10  approached for investigation.  The defendant
11  cooperated, took the officers to his vehicle.  And
12  thereafter inside the vehicle was found a quantity
13  of marijuana and a small quantity of crack cocaine
14  consistent -- and being packaged for sale, being 25
15  individually-wrapped pieces of nar- -- of a
16  controlled substance.

17  THE COURT:  Was it marijuana or...

18  MR. O'BRIEN:  Actually the marijuana was three
19  Ziplock bags of plant material.  There is also a
20  quantity of crack cocaine.  He's not alleged to have
21  sold the crack cocaine, Your Honor.

22  On the possession of controlled substance in
23  docket ending -584, possession with intent to sell,
24  this matter occurred June 22, 1998.  Officers
25  conducted a motor vehicle stop of a vehicle driven
26  by the defendant, Lee Henry.

27  Mr. Winslow, is he listening to that?

4

1    MR. WINSLOW:  Well, yeah, Your Honor.  He's

2    just got a -- we had a question on one thing, that's

3    all.  Can I -- can I just have one moment?

4    He pled to 531490 first, right?

5    THE COURT:  No, he --

6    MR. O'BRIEN:  520- --

7    THE COURT:  -- pled to 20- --

8    MR. O'BRIEN:  -- -203.

9    THE COURT:  Yeah.

10    MR. WINSLOW:  203?  Okay.

11    (Mr. Winslow and the defendant briefly

12    conferred.)

13    MR. O'BRIEN:  I'm honoring -- Mr. Winslow, I'm

14    honoring the offer made by another prosecutor --

15    MR. WINSLOW:  Right.

16    MR. O'BRIEN:  -- which is for sale --

17    MR. WINSLOW:  Right.

18    MR. O'BRIEN:  -- of controlled substance.

19    MR. WINSLOW:  Well I didn't have the second

20    page.  And so I just picked it up and that's why

21    it's on here.

22    THE COURT:  Do you want Mr. O'Brien to tell the

23    facts over again --

24    MR. WINSLOW:  No.

25    THE COURT:  -- so you know what he's talking

26    about?

27    MR. WINSLOW:  Not at all.

MARTINEZ & O'NEIL      TEL:1-413-746-4069      Jan 25'06  14:54 No.004 P.07
Case 3:05-cr-30010-MAP    Document 30-30    Filed 01/24/2006    Page 6 of 16

5

1           THE COURT:  Do you know what night he's talking

2     about?

3           THE DEFENDANT:  Well, Your Honor, I know what

4     he's talking about --

5           THE COURT:  Okay.

6           THE DEFENDANT:  -- but he said something --

7     he's -- in the statement -- I don't have that in

8     this statement that I took the cops to my car

9     voluntarily.  I didn't take 'em to my car.

10          THE COURT:  Well do you want to make this an

11    Alford Plea?

12          MR. WINSLOW:  Okay.  It's going to have to be

13    Alford because the other side of it is he's told me

14    several times about some of the statements on the

15    police report or -- I mean he gave that statement

16    which implicated himself.

17          THE COURT:  Uh-huh.

18          MR. WINSLOW:  But -- and the way it happened

19    isn't exactly how the police report --

20          THE COURT:  Wrote it down.

21          MR. WINSLOW:  -- wrote it.

22          (Mr. Winslow and the defendant briefly

23    conferred.)

24          MR. WINSLOW:  We're fine now.

25          MR. O'BRIEN:  I have some problems with the

26    Alford Plea in this matter, Your Honor, given the

27    fact that he signed --

MARTINEZ & O'NEIL    TEL:1-413-746-4069    Jan 25'06  14:55 No.004 P.08
Case 3:05-cr-30010-MAP    Document 30-30    Filed 01/24/2006    Page 7 of 16

6

1          THE COURT:  A written statement?

2          MR. O'BRIEN:  -- has a written, signed

3    statement.  If you'd like me to --

4          THE COURT:  I'm going to let him plead under

5    the Alford Doctrine, so let's --

6          MR. O'BRIEN:  All right.

7          THE COURT:  -- go -- let's continue the facts

8    on the --

9          MR. O'BRIEN:  The second facts --

10         THE COURT:  -- second file.

11         MR. O'BRIEN:  -- June 22, 1998, again, officers

12    conducting a motor vehicle stop on 307 Holmstead

13    Avenue, the vehicle operated by Lee Henry, in plain

14    view of the officers as they approached, noticed

15    that there was a quantity of what appeared to be

16    marijuana in the center console.  The dog was --

17    canine patrol was with -- brought to the scene;

18    responded positively as it was standing outside the

19    vehicle.  Thereafter found that within the vehicle

20    was a quantity of marijuana which was on the center

21    console.  There's also a quantity of marijuana in

22    the vehicle -- quantity of cocaine in the vehicle.

23        The agreement reached with the state was a --

24    on each count: five years suspended after 18 months,

25    three years probation.  Those should run concurrent

26    to one another.  Nolles to enter on all open counts.

27         THE COURT:  The state is waiving the PSI?

MARTINEZ & O'NEIL    TEL:1-413-746-4069    Jan 25 06  14:55 No.004 P.09
Case 3:05-cr-30010-MAP    Document 30-30    Filed 01/24/2006    Page 8 of 16

7

1          MR. O'BRIEN:  The state would waive the PSI,

2     Your Honor.

3          MR. WINSLOW:  Yes.  Yes, we are too, Your

4     Honor.

5          THE COURT:  Defense is waiving the PSI as well.

6          MR. STAWICKI:  As long -- we discussed a July

7     21st continuance date for sentencing.

8          THE COURT:  All right.  If I give you until

9     July 21st, you're going to turn yourself in that day?

10         THE DEFENDANT:  Yes.

11         THE COURT:  There will be no request for

12    continuances and you won't be like the individuals

13    whose case was just called where he failed to appear

14    for a sentencing, correct?

15         THE DEFENDANT:  No.

16         THE COURT:  All right.  Sir, I'm going to ask

17    you some questions.  Are you under the influence of

18    alcohol, drugs or medicine?

19         THE DEFENDANT:  No.

20         THE COURT:  Have you had enough time to talk to

21    Attorney Winslow about your decision to enter these

22    guilty pleas?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Are you satisfied with Attorney

25    Winslow's representations of you?

26         THE DEFENDANT:  Yes.

27         THE COURT:  Did you go over with Attorney

1    Winslow what the state would have to prove in order

2    for you to be found guilty of two counts of

3    possession with -- of marijuana with the intent to

4    sell?

5        THE DEFENDANT:  Yes.

6        THE COURT:  Did you also go over with him the

7    maximum possible penalty you faced?

8        THE DEFENDANT:  Yes.

9        THE COURT:  It's seven on each.  So if they

10   were to run one after the other, it would be 14

11   years exposure.  Am I right?  Wrong?  Fifteen?

12       MR. WINSLOW:  Fifteen, Your Honor, because it's

13   possession of narcotics; both of them are possession

14   of narcotics.

15       THE COURT:  No, I think it's seven.  Let me

16   check.

17       MR. WINSLOW:  Just -- with a possession with

18   intent to sell is 15, but possession only is 7.

19       THE COURT:  It's 7.

20       MR. WINSLOW:  All right.

21       THE COURT:  All right?  If he had pled to the

22   (a) section, it would have been 15, but he did plead

23   --

24       MR. WINSLOW:  Okay.

25       Q   -- to the (B) section, so it's 7 years and/or

26   $25,000. for each first offense.  And there's no

27   discussion of you being taken as a subsequent

MARTINEZ & O'NEIL    TEL:1-413-746-4069    Jan 25,06    14:56 No.004 P.11
Case 3:05-cr-30010-MAP    Document 30-30    Filed 01/24/2006    Page 10 of 16

9

1    offender. So they would have run one after the
2    other; you would have been exposed to 14 years in
3    jail and/or a maximum of $50,000. in fines. Do you
4    understand that? That's the maximum.

5         THE DEFENDANT: Yes.

6         THE COURT: Okay. You realize that by entering
7    these pleas today you're giving up your right to
8    have a trial in front of a judge or a jury with the
9    assistance of your attorney and have the state prove
10   you guilty beyond a reasonable doubt? Do you
11   understand you're giving up that right today?

12        THE DEFENDANT: Yes.

13        THE COURT: You're giving up your right not to
14   incriminate yourself; to confront the witnesses the
15   state claims it has against you; to cross-examine
16   those witnesses; testify on your own behalf if you
17   so chose to; and to present any witnesses and any
18   defenses you might have to these charges. You
19   realize you're giving up all those rights?

20        THE DEFENDANT: Yes.

21        THE COURT: Now, other than these cases here,
22   do you have any other pending cases? Are you on
23   parole, probation or conditional discharge?

24        THE DEFENDANT: No.

25        THE COURT: I will tell you if you're not a
26   citizen of the United States, conviction of these
27   offenses that you just entered guilty pleas too may

1     have the consequence deportation, exclusion from

2     admission to the United States or denial of

3     naturalization all pursuant to the laws of the

4     United States.  Do you understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Now, other than this proposed plea

7     agreement of 5 suspended after 18 months, 3 years

8     probation, has anything else been promised to you to

9     get you to plead guilty?

10         THE DEFENDANT:  No.

11         THE COURT:  Anyone force you or threaten you in

12    any way to get you to plead guilty?

13         THE DEFENDANT:  No.

14         THE COURT:  Now you entered, I believe, line

15    16, that plea was entered under the Alford Doctrine.

16    You understand that the Alford Doctrine means that

17    although you don't necessarily agree with the facts

18    as put on the record by the state's attorney, you

19    believe that if you were to go to trial, you risk a

20    likelihood of being convicted.  And, rather than

21    risk a harsher penalty, you want to take advantage

22    of the plea bargain that's been struck here today?

23         THE DEFENDANT:  Yes.

24         THE COURT:  All right.  You have to understand

25    though that the Court is going to have to make a

26    finding that there's a factual basis to accept your

27    plea.  And this will go down as a felony conviction

MARTINEZ & O'NEIL    TEL:1-413-746-4068    Jan 25'06    14:57 No.004 P.13
Case 3:05-cr-30010-MAP    Document 30-30    Filed 01/24/2006    Page 12 of 16

11

1    on your record. Do you understand that?

2        THE DEFENDANT: Yes.

3        THE COURT: Now, if I accept your guilty pleas

4    today and give you a continuance, you will not be

5    allowed to come back into court in the future and

6    withdraw these pleas. Do you understand that?

7        THE DEFENDANT: Yes.

8        THE COURT: Once I accept them today, you're

9    committed to these guilty pleas.

10        THE DEFENDANT: Yes.

11        THE COURT: All right. Does either side know

12    of any reason why the pleas should not be accepted?

13        MR. O'BRIEN: No.

14        MR. WINSLOW: No, Your Honor.

15        THE COURT: Sir, do you have any questions of

16    the Court?

17        THE DEFENDANT: No.

18        THE COURT: The Court will make a finding the

19    defendant's pleas are knowingly, voluntarily,

20    understandably made with the assistance of competent

21    counsel. There's a factual basis for his pleas and

22    a finding of guilty may enter.

23        Now, as discussed, you want some time before

24    you have to turn yourself in.

25        THE DEFENDANT: Yes.

26        THE COURT: If I give you to July 21st, you'll

27    be here at 10:00 to surrender for sentencing

```
 1            purposes?

 2                    THE DEFENDANT:  Yes.

 3                    THE COURT:  And you'll be ready to go that day?

 4                    THE DEFENDANT:  Yes.

 5                    THE COURT:  All right.  And I have your word on

 6            that?

 7                    THE DEFENDANT:  Yes.

 8                    THE COURT:  All right.  Sentencing will be

 9            scheduled for 10:00 July 21st in this courtroom.

10                    MR. WINSLOW:  Wait a minute.  Wait a minute.

11                    THE COURT:  What's the matter, Mr. Winslow?

12                    MR. WINSLOW:  I think I took that week off.

13                    THE COURT:  All right.  Well...

14                    MR. WINSLOW:  I just realized that.

15                    THE COURT:  What --

16                    MR. WINSLOW:  The 17th is the beginning of that

17            week?

18                    THE COURT:  The 19th is a Monday.

19                    MR. WINSLOW:  Okay.  I am -- that's the only

20            week the whole summer I am taking off on vacation so

21            that...

22                    THE COURT:  Are you going to be here Friday,

23            the 16th?

24                    MR. WINSLOW:  Yes.

25                    THE COURT:  Can you --

26                    MR. WINSLOW:  I'll be here --

27                    THE COURT:  -- come in on Friday --
```

13

1          MR. WINSLOW:  -- on Friday, the 16th.

2          THE COURT:  -- to do this, Mr. --

3          THE DEFENDANT:  Yes.

4          MR. WINSLOW:  Friday, the 16th.

5          THE COURT:  So July the 16th, 10:00.

6          THE DEFENDANT:  Okay.

7          THE COURT:  Okay?

8          MR. O'BRIEN:  All right.  And, Your Honor, he

9      should know that if he picks up any case in the

10     interim, all deals are off here.

11         THE COURT:  All right?

12         THE DEFENDANT:  All right.

13         THE COURT:  July 16th for sentencing.

14         MR. WINSLOW:  Okay.

15         THE CLERK:  The open counts --

16         MR. O'BRIEN:  I'll nolle them at the time of

17     sentencing.

18         THE CLERK:  All right.

19         (The Court went on to other matters on the

20     docket.  11:57a.m.)

21         *    *    *    *    *    *    *    *    *

22

23

24

25

26

27

CT. JOCL-201 DP REV. 6/90

STATE OF CONNECTICUT
SUPERIOR COURT

DOB: 09/30/1967

YES

COURT DATE: 04/11/1998    AT: GA14 - HARTFORD

DISPOSITION DATE:
DOCKET NO.: CR98-0520201-B

The undersigned, Deputy Assistant State's Attorney of the Superior Court or the State of Connecticut, in said Geographical Area, on his oath of office complains, deposes, and alleges that he has reason to believe and does believe that

JUL 16 199

HENRY LEE ALLAN JR
44 THOMASTON ST, HARTFORD, CT 00000

did commit the crimes recited below:

Count: 001    POSSESSION OF NARCOTICS         Type/Class: F/U    At: HARTFORD
On or About: 04/09/1998              In Violation Of CGS/PA No: 21a-279(a)

Count: 002    POSS CNTRLD SBSTNC/<4 OZ MRHNA    Type/Class: M/U    At: HARTFORD
On or About: 04/09/1998              In Violation Of CGS/PA No: 21a-279(c)

Count: 003    SALE OF CERTAIN ILLEGAL DRUGS    Type/Class: F/U    At: HARTFORD
On or About: 04/09/1998              In Violation Of CGS/PA No: 21a-278(b)

SEE OTHER SHEETS FOR ADDITIONAL COUNTS    DATE    APR 13 199

SIGNED (DEPUTY ASST. STATES ATTORNEY)

| CT | PLEA DATE | PLEA | PLEA WITHDRAWN DATE | NEW PLEA | VERDICT PENDING | FINE | JAIL | |
|----|-----------|------|---------------------|----------|-----------------|------|------|---|
| 1 | | | | | | | | Nolle |
| 2 | | | | | | | | Nolle |
| 3 | | | G | G | | | | 5 years ESA 18 months 3 years concurrent w/ CR98-573584 |

| DATE | OTHER COURT ACTION | JUDGE |
|------|--------------------|----|
| | PUBLIC DEFENDER APPOINTED    X DENIED | |
| JUL 22 1998 | P.D. W WITHDRAWN | |
| | PUBLIC DEFENDER APPOINTED    X DENIED | |
| | ADVISED OF PENALTY OF GUILTY PLEA | |
| | PLEA FOUND VOLUNTARY | |
| | ADVISED OF IMMIGRATION LAWS | |
| | S.C. See File CR98-573584 | |
| 2005 | Motion to Vacate Plea and Sentence Filed | |

| AID | RECEIPT NO. | MITTIMUS DATE | | TRIAL TOWN | |
| EXECUTOR ON ORIGINAL DISPOSITION | REPORTER ON ORIGINAL DISPOSITION | SIGNED CLERK | SIGNED JUDGE |
| O'Brien | | | Wells | |

SUP CT. JDCR 701 DP REV. 8/90

**STATE OF CONNECTICUT**
SUPERIOR COURT

DOB: 09/30/1967

TRIAL INFORMATION     YES     COURT DATE 04/23/1998 AT GA14 - HARTFORD

DISPOSITION DATE:
DOCKET NO.:  CR98-0320203-S

The undersigned, Deputy Assistant State's Attorney of the Superior Court or the State of
Connecticut, in said Geographical Area, on his oath of office
complains, deposes, and alleges that he has reason to believe and does believe that

HENRY LEE ALLAN JR
44 THOMASTON ST, HARTFORD, CT 00000

Did commit the crimes recited below:

Count: 004     SALE OF CONTROLLED SUBSTANCE     Type/Class: F/U  At: HARTFORD
On or About: 04/09/1998                         In Violation Of CGS/PA No: 21a-277(b)

SEE OTHER SHEETS FOR ADDITIONAL COUNTS | DATE | SIGNED (DEPUTY ASST. STATE'S ATTORNEY)

**COURT ACTION**

DEFENDANT ADVISED OF RIGHTS BEFORE PLEA | BOND | SURETY | ELECTION
JUDGE | (DATE) | | COURT | JURY
ATTY. | PUB. DEFENDER | GUARDIAN | REDUCTION | B.D. | APPEAL | ELECTION WITHDRAWN | DATE
| | | | | | SEIZED PROPER

| CT | PLEA DATE | PLEA | PLEA WITHDRAWN DATE / NEW PLEA | VERDICT PENDING | FINE | | ADDITIONAL DISPOSITION |
|---|---|---|---|---|---|---|---|
| 04 | | NG | | G | | | Nolle  1/19/06 |
| | | | | | | 1/19/06 | 5yrs els after 18 months probation 3ys |
| | | | | | | | Concurrent W/CR98-523584 |
| | | | | | | | * Sentence Modified * Conway J |

| DATE | STATE OF CONNECTICUT | | JUDGE | | CONTINUANCE |
|---|---|---|---|---|---|
| | SUPERIOR COURT | | | DATE | PURPOSE | REASON |
| | JUDICIAL DISTRICT OF | | | 1. 3-31-99 T | | |
| | HARTFORD | | | 2. 5-24-99 T | | |
| | JAN 23 2006 | | | 3. 6-15-99 T | | |
| | CERTIFIED COPY | | | 4. 6-8-99 T | | |
| | SEAL AFFIXED | | | 5. 7-16-99 T/Sent | | |
| | BY | | | 6. | | |
| | Deputy Clerk | | | 7. | | |
| | | | | 8. | | |
| | | | | 9. | | |
| | | | | 10. | | |

AID | RECEIPT NO | MITTIMUS DATE | | TRIAL TOWN | | SEE REVERSE SIDE

EXECUTOR ON ORIGINAL DISPOSITION | REPORTER ON ORIGINAL DISPOSITION | SIGNED CLERK | SIGNED JUDGE